IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONTE CANNON, | : | |
| *Petitioner* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT GARMAN *et al.*, | : | No. 19-09 |
| *Respondents* | : | |

## MEMORANDUM

PRATTER, J.                                                          MARCH 29, 2022

Donte Cannon seeks habeas relief in federal court after his conviction for second-degree murder in state court. He raises six challenges, four of which he previously raised in state court. He did not raise the other two in the state court first, which makes them procedurally defaulted. Either way, all six challenges have no merit. Thus, after a full review the Court will adopt the Report and Recommendation of Magistrate Judge David R. Strawbridge and deny Mr. Cannon's petition.

### BACKGROUND

#### A. The Conviction

On the night of January 23, 2010, Donte Cannon was at Shandee Stewart's house, where the two discussed a plan to rob Philippe Koukoui, who had previously sold Ms. Stewart marijuana.[1] Mr. Cannon called Aaron McCallum, who came to Ms. Stewart's house, and the three of them discussed a plan to rob Mr. Koukoui. The plan was that Ms. Stewart would call Mr. Koukoui to buy marijuana; Mr. Cannon and Mr. McCallum would wait in the basement of the house until Mr. Koukoui left; and they would then rob him on the street. Enacting this plan, Ms. Stewart called

---

[1] Unless otherwise noted, the facts recounted here are a summary of those set forth in the Pennsylvania Superior Court opinion, *Commonwealth v. Cannon*, No. 1342 EDA 2012, 2014 WL 10575196 (Pa. Super. Ct. Sept. 8, 2014).

Mr. Koukoui, who arrived with a friend named James Henderson.  Mr. Koukoui and Mr. Henderson stayed for 10 minutes and then left.

After Mr. Koukoui and Mr. Henderson left, Ms. Stewart saw Mr. McCallum and Mr. Cannon, each holding a gun, approach the other two on the street.  Mr. McCallum grabbed Mr. Henderson by his shirt while Mr. Cannon grabbed Mr. Koukoui by his shirt.  Mr. Henderson began running and Mr. McCallum shot at him.  Ms. Stewart then heard more gunshots.  The police later found Mr. Koukoui dead, lying face down with gunshot wounds to the back of his head and neck.

The police took Mr. Cannon to the Homicide Division office to take his statement.  In his signed statement, Mr. Cannon admitted that he and Mr. McCallum followed the two men outside to rob them and fought with them.  He stated that he knew Mr. McCallum likely had a gun and that he heard four to five gunshots.  He also stated that Mr. McCallum called him afterwards to ask him if anyone was shot and that Mr. Cannon told Mr. McCallum that someone was dead.

Ms. Stewart, Mr. Cannon, and Mr. McCallum were charged with various crimes including robbery and murder.  Ms. Stewart pled guilty to two counts of robbery and conspiracy, and the prosecutor *nolle prossed* the murder charge.  Her plea agreement required her to testify at Mr. Cannon and Mr. McCallum's trial, and provided that the agreement would become null and void if she provided false testimony.  Doc. No. 18, at 78.

Mr. Cannon and Mr. McCallum were tried jointly before a jury in 2012.  At trial, a witness for the Commonwealth named Cory Williams testified that he had been with Mr. McCallum on the night of Mr. Koukoui's death and that Mr. McCallum had left for around 20 minutes, but later returned and said that a man was dead.  The Commonwealth also introduced Mr. Cannon's confession.  When the confession was read to the jury, specific references to Mr. McCallum were redacted and read as "the other guy."  *Cannon*, 2014 WL 10575196, at *13 n.1.

Both Mr. Cannon and Mr. McCallum were convicted of second-degree murder, criminal conspiracy, two counts of robbery, and related firearms crimes. They both were sentenced to life without the possibility of parole. *Id.* at *1.

## B.  State Appeals

Mr. Cannon filed a direct appeal with the Pennsylvania Superior Court, challenging the weight and sufficiency of the evidence, as well as the decision not to sever the trials for the two defendants, the admission of his co-defendant's confession to Mr. Williams over his objection, opinion statements in the prosecutor's closing argument, the prosecutor's use of an autopsy photograph during closing argument, the admission of forensic reports of phone records, and denial of courtroom entry of his friends and family members during two of the closing speeches. *Cannon*, 2014 WL 10575196, at *10. The Superior Court affirmed the judgment, and the Pennsylvania Supreme Court denied allowance of appeal.

Mr. Cannon filed a timely *pro se* PCRA petition, which he subsequently amended through counsel. In his *pro se* PCRA petition, he alleged that his trial counsel was ineffective on various grounds: failing to accurately describe reasonable doubt to the jury; failing to object to the introduction of his marijuana conviction; failing to object to testimony that his co-defendant often carried a gun; failing to challenge a witness's false testimony about Ms. Stewart's plea deal; eliciting impermissible opinion testimony from a police detective; failing to secure a bench warrant to compel the presence and testimony of an alibi witness; failing to challenge the erroneous denial of trial severance; and failing to object to the expression of an opinion in closing argument. PCRA Pet. ¶ 10 (Jan. 19, 2016). In his counseled amended petition, Mr. Cannon narrowed his claims and added a claim for failure to introduce Ms. Stewart's mental health evaluation.

The PCRA court dismissed the PCRA petition on the merits. Mr. Cannon appealed based on the reasonable doubt description; false testimony about Ms. Stewart's plea deal; Ms. Stewart's mental health evaluation; introduction of his marijuana conviction; and a "cumulative prejudice argument." *Commonwealth v. Cannon*, No. 1809 EDA 2017, 2018 WL 2978381, at *1–2 (Pa. Super. Ct. June 14, 2018). The Superior Court affirmed the dismissal. *Id.* at *1. The Pennsylvania Supreme Court denied allowance of appeal on November 20, 2018. *Commonwealth v. Cannon*, 197 A.3d 1176 (Table) (2018).

### C. Federal Habeas

Mr. Cannon then filed this federal habeas petition pursuant to 28 U.S.C. § 2254. He asserts the following grounds:  (1) trial counsel was ineffective for failing to properly explain the "reasonable doubt" standard to the jury; (2) appellate counsel was ineffective for failing to challenge the admission of "false statements" by both Ms. Stewart's counsel and the trial court regarding the terms of Ms. Stewart's plea agreement; (3) trial counsel was ineffective for failing to introduce Ms. Stewart's mental health evaluation as evidence of her mental impairment; (4) Mr. Cannon's Sixth Amendment rights were violated when the trial court admitted evidence of his co-defendant's confession over his express objection, as set out in *Bruton v. United States*, 391 U.S. 123 (1968); (5) trial counsel was ineffective for failing to object more thoroughly to the admission of the co-defendant's confession; and (6) trial counsel was ineffective for failing to request that the trial court give a "corrupt source" instruction to the jury regarding Ms. Stewart's testimony.[2]

In his Report and Recommendation, the Magistrate Judge ruled that Mr. Cannon had procedurally defaulted his fifth and six claims and that all six were meritless.  Doc. No. 36.

---

[2] In his objections to the Report & Recommendation, Mr. Cannon also mentions an argument that a police detective did not provide written proof of *Miranda* warnings and that "his inculpatory statement to police was involuntary and the product of a prolonged and exhausting interrogation."  Doc. No. 44, at 1. However, Mr. Cannon did not raise this issue in his habeas petition or at either round of direct or collateral

Magistrate Judge Strawbridge recommended denying Mr. Cannon's petition without issuing a certificate of appealability. Mr. Cannon filed objections after obtaining an extension of time and of the page limit. Doc. Nos. 38, 42. He also filed a motion for appointment of counsel. Doc. No. 45. The Commonwealth did not respond to Mr. Cannon's objections.

## LEGAL STANDARDS

Federal courts can receive habeas petitions from state court prisoners, but only in limited circumstances. The prisoner must first have "exhausted the remedies available in" state court. 28 U.S.C. § 2254(b)(1)(A). If a prisoner misses an important procedural step in state court, and the state court refuses to hear the petition on its merits because of it, the prisoner has procedurally defaulted his claims. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). If the prisoner "failed to meet the State's procedural requirements," he "has deprived the state courts of an opportunity to address the merits of those claims in the first instance." *Id.* (internal quotation marks omitted). Thus, the state court's denial "based on an adequate and independent state procedural rule" precludes federal review. *Id.*

To overcome this procedural default, the prisoner must show that he had good "cause" for his failure to follow state procedures and that he experienced "prejudice" from the underlying constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Otherwise, the prisoner must show that it would be a "fundamental miscarriage of justice" for the federal court not to hear his petition because he is "probably" "innocent." *Id.* at 748 (internal quotation marks omitted).

If the claim was adjudicated on the merits in state court, habeas relief can issue only if adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

---

review in state court. To the extent he intended to assert a new habeas claim in his objections based on introduction of his self-incriminating statements, he has procedurally defaulted such a claim. He has not overcome the procedural default for the reasons set forth in Section V, *infra.*

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d).

DISCUSSION

In his petition, Mr. Cannon raised six constitutional claims, all based on the Sixth Amendment. The Magistrate Judge's Report and Recommendation found each meritless. In his objections, Mr. Cannon continues to claim the same violations. The Court conducts "de novo" review of the Magistrate Judge's ruling. 28 U.S.C. § 636(b)(1)(C).

The Court begins with Mr. Cannon's Confrontation Clause claims and then addresses his various ineffective assistance of counsel claims.

**I.     Confrontation Clause Claims**

Mr. Cannon argues that the trial court violated the right established by the Supreme Court in *Bruton v. United States*, 391 U.S. 123 (1968), by allowing testimony about his co-defendant's confession. Mr. Cannon properly exhausted this claim, so the Court will address it on the merits.

In *Bruton*, the Supreme Court held that a defendant's constitutional rights are violated when a co-defendant's confession implicates the defendant, even if a limiting instruction is given by the trial court to consider the confession only against the co-defendant. 391 U.S. at 126. Then, in *Richardson v. Marsh*, 481 U.S. 200, 208 (1987), the Supreme Court recognized a "narrow exception" to *Bruton*, where it held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." In recognizing this exception, the Supreme Court distinguished between confessions

that name the defendant and those that become incriminating only when linked with evidence properly introduced at trial. *Id.*

Here, Mr. Cannon's name was not mentioned at any point during Mr. Williams's testimony. Mr. Williams testified, in relevant part, as follows:

> [Mr. McCallum] was on Beaumont. He was waiting for the guy to come. The guys came. He hopped out on the guys. One guy took off. Shots got fired. The other guy, he got grabbed, he got threw to the ground. Shots got fired. He ended up dead. That's the story.

The Superior Court found that this recitation of Mr. McCallum's confession was redacted to exclude any reference to another perpetrator, and the jury was instructed to consider Mr. Williams's statement as only against Mr. McCallum. *Cannon*, 2014 WL 10575196, at *9–10. Review of the trial transcript confirms that Mr. Williams made no reference to Mr. Cannon, aside from Mr. Williams stating at the beginning of his testimony that he did not know Mr. Cannon. Mar. 26, 2012 Trial Tr. at 74:5–104:3.

Pointing to the redacted confession's use of the phrase "the other guy," Mr. Cannon argues that Mr. Williams's testimony could suggest that Mr. Cannon was the shooter, analogizing to *Vasquez v. Wilson*, 550 F.3d 270 (3d Cir. 2008). In *Vasquez*, the Court of Appeals held that a use of "the other guy" in a redacted reference to the defendant was too obvious to qualify as a proper redaction under *Bruton*. *Id.* at 279–81. Mr. Cannon argues that the prosecutors in his case made the same mistake and substituted his name with "the other guy." Doc. No. 4, at 3–4. But, as the R&R explains, "the other guy" referred to the person who died (Mr. Koukouri), not Mr. Cannon. Doc. No. 36, at 24 & n.15.

Even if the confession does not directly identify another shooter, Mr. Cannon argues, Mr. Williams's statement "interlocked" with the other facts presented, necessarily implicating him and prejudicing the jury, *Cannon*, 2014 WL 10575196, at *10. However, the Supreme Court has

expressly rejected this theory in *Richardson*. The fact that Mr. Williams's testimony about Mr. McCallum's confession could be linked to other evidence properly introduced at trial implicating Mr. Cannon does not render the confession's admission a violation of the Confrontation Clause. *Richardson*, 481 U.S. at 208. Thus, the Confrontation Clause claim lacks merit, and the Court will overrule Mr. Cannon's objection to the R&R on this claim.

Additionally, Mr. Cannon complains that his counsel did not object more thoroughly to the admission of Mr. McCallum's confession through Mr. Williams's testimony. This claim is procedurally defaulted because Mr. Cannon did not raise it on direct or collateral appeal and, for the reasons discussed below, he does not overcome this default. Even so, the claim would fail on the merits because Mr. Williams's testimony was admissible and Mr. Cannon's objections under *Bruton* lack merit. Trial counsel cannot be found ineffective based on the failure to pursue a meritless objection. *See, e.g., United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Additionally, the allegation that trial counsel did not sufficiently object to Mr. Williams's testimony is belied by the record. Mr. Cannon's trial counsel objected and requested a sidebar on this very topic at the beginning of Mr. Williams's testimony, and then moved for a mistrial immediately after the testimony based on the alleged violation of Mr. Cannon's right to confrontation. Doc. No. 36, at 28; Mar. 26, 2012 Trial Tr. at 78:12–81:13, 104:20–105:20. Therefore, the allegation that counsel committed error on this basis fails.

## II. Reasonable Doubt Instruction

Next, Mr. Cannon calls his counsel ineffective in dealing with several issues. But he has not shown that his counsel's tactical decisions were unreasonable or unschooled. *Strickland*, 466 U.S. at 687–88. Nor has he shown a "reasonable probability" that, had counsel done what Mr. Cannon now demands, Mr. Cannon would have been acquitted. *Id.* at 694.

Mr. Cannon asserts that his trial counsel was ineffective by improperly explaining the "reasonable doubt" standard to the jury in his closing argument. Specifically, he claims that his trial counsel used the terms "real" and "substantial," thereby reducing the prosecution's burden of proof by requiring a higher degree of doubt than is required for acquittal under the reasonable-doubt standard, citing *Cage v. Louisiana*, 498 U.S. 39 (1990). Doc. No. 44, at 11.

Mr. Cannon's trial counsel did not use the word "substantial" anywhere in his closing argument, Doc. No. 36, at 11 n.6; Mar. 27, 2012 Trial Tr. 126:12–133:25 (Mar. 27, 2012), but he did state that "[i]t's got to be a real doubt . . . something important," *id.* at 128:6–7. That description, in isolation, was not constitutionally ineffective. As the Superior Court explained in rejecting this argument on the merits at the PCRA stage, Mr. Cannon takes the words out of context from a seven-page description of reasonable doubt. *Cannon*, 2018 WL 2978381, at *4–5. Mr. Cannon does not address this broader context of the closing argument description of reasonable doubt. In any case, the trial court provided a jury instruction that accurately explained reasonable doubt. Mar. 28, 2012 Trial Tr. 18:10–19:15. Therefore, Mr. Cannon has not established that his trial counsel's closing argument was unreasonable or that it prejudiced him.

### III.    Ms. Stewart's Plea Agreement

Next, Mr. Cannon asserts that his appellate counsel failed to challenge the admission of "false statements" by both Ms. Stewart's counsel and the trial court regarding the terms of Ms. Stewart's plea agreement—specifically, whether the murder charge against Ms. Stewart could be reinstated if she provided false testimony. Doc. No. 1, at 10. Because the only instance in which the trial court discussed whether the murder charge could be reinstated was during a sidebar without the jury present, the R&R properly focused on the allegations regarding statements made by Ms. Stewart's counsel. Doc. No. 36, at 14 n.9; Mar. 23, 2012 Trial Tr. at 73:22–76:12.

On cross-examination of Ms. Stewart, Mr. Cannon's trial counsel elicited testimony suggesting that Ms. Stewart was only testifying as the prosecutor's office wanted her to, out of fear the murder charge could be reinstated. Mar. 22, 2012 Trial Tr. at 195:4–196:7. To rebut this testimony, the prosecution called Ms. Stewart's attorney, who testified that the plea agreement required Ms. Stewart to testify truthfully and did not give the prosecutor the power to charge Ms. Stewart "on [his] own" if "she didn't testify the way [the prosecutor] wanted her to" testify. Mar. 23, 2012 Trial Tr. at 81:14–21, 82:2–12.

Mr. Cannon now argues that this testimony was false because Ms. Stewart's murder charge could be reinstated, and that his trial counsel should have objected. According to Mr. Cannon, "[h]ad the jury been unambiguously informed that Stewart *could have been recharged* with homicide it may have chosen to disbelieve her testimony which probably would have led to a different outcome in the proceedings." Doc. No. 44, at 15 (emphasis added). But the testimony of Ms. Sanders's counsel was not inaccurate; the plea agreement shows that it is *untruthful* testimony that could result in its rescission, not failure to testify the way the prosecutor wanted. Doc. No. 18, at 78 ¶ 12. And Ms. Stewart herself testified that she thought the murder charge could be reinstated if she violated the agreement. Mar. 22, 2012 Trial Tr. at 195:17–24. Mr. Cannon's trial counsel drew out testimony that did in fact call Ms. Stewart's credibility into question. Based on these facts, Mr. Cannon's appellate counsel was not unreasonable in declining to challenge this particular point by Ms. Stewart's attorney, and Mr. Cannon shows no prejudice from counsel's decision not to do so.

## IV.   Ineffective Assistance of Counsel Claims

Mr. Cannon also faults his trial counsel for not introducing Ms. Stewart's mental health evaluation as impeachment evidence. Ms. Stewart underwent a medical evaluation in April 2010

to determine whether she was competent to stand trial. *Cannon*, 2018 WL 2978381, at *5.   The examination found that her mental function was on the "borderline" or in the "mild" range of a mental disability, but that "in spite of her intellectual and emotional limitations, [she] is capable of taking part in legal proceedings." *Id.* at *5 (internal quotation marks omitted).   Mr. Cannon argues that his counsel should have impeached Ms. Stewart as a witness using this mental health evaluation.

On PCRA review, the Superior Court rejected this claim, explaining that "only mental health disabilities that impair a witness's ability to observe, recall, or report events, are relevant and admissible to impeach a witness's credibility." *Id.* (quoting *Commonwealth v. Davido*, 106 A.3d 611, 637 (Pa. 2014)).   Ms. Stewart's evaluation did not reveal any such disability, and Mr. Cannon has not pointed to one.   The Superior Court's ruling is not an unreasonable interpretation of the facts or law.

Nonetheless, Mr. Cannon objects that, under his interpretation of *Atkins v. Virginia*, 536 U.S. 304 (2002), "a person[']s 'mental status' is highly relevant in court proceedings when it comes to fundamental fairness." Doc. No. 44, at 6. But *Atkins* concerned whether execution of mentally disabled defendants violated the Eighth Amendment prohibition on cruel and unusual punishment. 536 U.S. at 321. *Atkins* does not address the issue here, which is that there was no evidence of a mental disability related to Ms. Stewart's ability to perceive or report events as a witness. In fact, the Superior Court explained that the evaluation stated that Ms. Stewart had a "fairly good" memory. *Cannon*, 2018 WL 2978381, at *5. Mr. Cannon does not contest this point. Therefore, trial counsel was not unreasonable for not pursuing this line of questioning with Ms. Stewart.

V.    **Procedural Default**

Finally, Mr. Cannon alleges that his trial counsel was ineffective for failing to request that the trial court give a "corrupt source" instruction to the jury regarding Ms. Stewart's testimony. As with the ineffective assistance of counsel claim based on *Bruton*, Mr. Cannon did not raise this complaint on either direct appeal or through his PCRA petition. He would now be barred from raising this claim in state court by both the waiver and time bar provisions of the PCRA.[3] *See* 42 Pa. C.S. 9543(a)(3), 9544(a)(2), 9545(b). This procedural error bars Mr. Cannon's claim from being heard on the merits because this Court cannot "consider claims that a state court refused to hear based on an adequate and independent state procedural ground." *Davila*, 137 S. Ct. at 2062. Mr. Cannon concedes that he procedurally defaulted the corrupt source claim and the *Bruton* ineffective assistance of counsel claim, but argues that he can overcome this procedural default. However, he has not done so.

**A. Mr. Cannon has not shown that he is probably innocent**

To start, Mr. Cannon asserts that it would be "a fundamental miscarriage of justice" not to hear his claims on the merits because he is actually innocent of the crimes for which he was convicted. *Coleman*, 501 U.S. at 750. In order to show a "miscarriage of justice", the petitioner must show his actual innocence with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

---

[3] Although the statute allows tolling of the one-year period while timely petitions are pending, such tolling would not render a new PCRA petition timely here (even setting aside the waiver provision). Mr. Cannon's judgment became final on February 11, 2015 when the Supreme Court denied his petition for allowance of appeal. *Cannon*, 2018 WL 2978381, at *1. He then filed a timely PCRA petition on January 19, 2016, *id.*, which was 342 days later. After the Pennsylvania Supreme Court's later denial of allowance of appeal on November 20, 2018, *Commonwealth v. Cannon*, 197 A.3d 1176 (Table) (2018), Mr. Cannon did not file the instant habeas petition until January 2, 2019, which was another 43 days later. As a result, Mr. Cannon is well over the one-year deadline even with statutory tolling.

Instead of offering new evidence, Mr. Cannon merely reasserts his defense at trial that he was "inside a nearby dwelling when the crime occurred, and [remained] there after the crime and even when police came to investigate hours later." Doc. No. 4, at 2. He presents no new evidence in support of this defense, nor does he address his confession to the police detective that he was involved in the robbery (which directly contradicts his supposed alibi). Because he has not raised a colorable claim of factual innocence, the claim remains procedurally defaulted.

**B.  Mr. Cannon has not shown cause or prejudice**

Additionally, the default of a claim alleging ineffective assistance of trial counsel may be excused by the ineffectiveness of habeas counsel where (1) the habeas counsel's failure itself met the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).

Mr. Cannon argues that his collateral review counsel was ineffective and his underlying claims are "substantial." But Mr. Cannon has not shown that his defaulted claim has merit, and therefore, it does not establish a substantial claim of ineffective assistance of counsel to excuse the procedural default. Even if it was not procedurally defaulted, this claim would fail on the merits. A corrupt source instruction is one given in a case "in which an accomplice implicates the defendant," so the court "instruct[s] the jury that the accomplice is a corrupt and polluted source whose testimony should be considered with caution." *Commonwealth v. Williams*, 732 A.2d 1167, 1181 (Pa. 1999). Mr. Cannon argues that his counsel should have requested such an accomplice instruction related to Ms. Stewart's testimony.

But the Pennsylvania Supreme Court has held that trial counsel is not ineffective in deciding not to seek such an instruction where the defendant is asserting an innocence theory because the corrupt source accomplice-based instruction would contradict this defense. *Commonwealth v. Karabin*, 426 A.2d 91, 93 (1981). Here, Mr. Cannon's defense was that he was not involved in the shooting and was instead inside a nearby house. He continues to assert this defense on an actual innocence theory to overcome his procedural default. "To request the accomplice instruction could derogate that defense" because "the necessary implication would be that [the defendant] participated in the criminal activity of which he claims to be innocent." *Id.*

Attempting to reconcile his defense with this instruction, Mr. Cannon cites *DeFoy v. McCullough*, 53 F. App'x 199 (3d Cir. 2002), as a case where, according to Mr. Cannon, counsel was found ineffective for not requesting a corrupt source instruction when the defendant asserted that he was innocent. Doc. No. 44, at 8–9. But even in *DeFoy*, the court noted that "whatever deficiencies there may have been in counsel's performance did not affect the outcome of the trial" because, in part, trial counsel elicited the purported accomplice's motives for testifying on cross-examination and the trial court provided instructions on witness credibility. *DeFoy*, 53 F. App'x at 200. So too here. Even if trial counsel should have requested the instruction (which, as a matter of strategy, is debatable at most), trial counsel examined Ms. Stewart's motives and her plea agreement extensively in cross-examination, and the court instructed the jury on assessing witness credibility. Mar. 22, 2012 Trial Tr. at 195:2–196:7; Mar. 28, 2012 Trial Tr. at 19:16–23:22. Therefore, Mr. Cannon's claim based on a "corrupt source" instruction would fail on the merits, even if it was not procedurally defaulted.

## VI.    Appointment of Counsel

After filing his objections to the Report & Recommendation, Mr. Cannon also filed a motion requesting the appointment of counsel. He asserted that he had thus far relied on the legal assistance of fellow inmate who was about to be released. Doc. No. 45 ¶ 7. Mr. Cannon's motion states that he "only went as far as the 12th grade in high school," has not "had any formal training in criminal law or otherwise," and is unfamiliar with litigation. *Id.* ¶¶ 8–10.

There is no constitutional right to counsel in habeas proceedings. *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019). However, counsel may be appointed to an indigent habeas petitioner where the "interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). "In making this determination the court should consider the complexity of the factual and legal issues in the case and the petitioner's ability to investigate facts and present his claims." *Hill v. Ferguson*, 396 F. Supp. 3d 506, 529 (E.D. Pa. 2019). Counsel need not be appointed when the issues are "'straightforward and capable of resolution on the record' . . . or the petitioner 'had a good understanding of the issues and the ability to present forcefully and coherently his conclusions.'" *Id.* (quoting *Reese v. Fulcomer*, 946 F.2d 247, 264 (3d Cir. 1991)). Counsel also should not be appointed if the claim lacks "arguable merit." *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993).

Mr. Cannon has ably and fully presented his claims, and requested appointment of counsel only after successfully obtaining an extension to the page limit for his objections and filing such objections. Mr. Cannon has presented his claims coherently, including citations to case law, and the claims are capable of resolution on the record without further need to investigate facts. Despite Mr. Cannon's articulate objections, his claims lack arguable merit. Therefore, the Court denies Mr. Cannon's late-stage motion to appoint counsel.

## CONCLUSION

The Court overrules Mr. Cannon's objections and adopts the R&R in full. The Court also denies Mr. Cannon's motion to appoint counsel. Because reasonable jurists would not "find it debatable" that each of Mr. Cannon's claims lack merit, the Court will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE